UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAIME JOSUE MEDINA JIMENEZ,<br>Petitioner,<br>v.<br>BRUCE SCOTT et al.,<br>Respondents. | CASE NO. 2:26-cv-03642-LK<br><br>ORDER DENYING PETITION FOR HABEAS CORPUS |

This matter comes before the Court on Petitioner Jaime Josue Medina Jimenez's Petition for Writ of Habeas Corpus, Dkt. No. 1, and his motion for a temporary restraining order, Dkt. No. 13. For the reasons stated below, the Court denies the petition and the motion.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela. Dkt. No. 9 at 1. He was removed from the United States in August 2023 pursuant to an order of expedited removal. Dkt. No. 9 at 2. The following month, he entered the country unlawfully, was apprehended by U.S. Border Patrol

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

agents near El Paso, Texas, and was "transported for further proceedings." *Id.* at 2. He was subsequently released from custody pursuant to an Order of Release on Recognizance and issued a Form I-862, Notice to Appear, charging him as removable from the United States under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i), and ordered to appear before an immigration judge in removal proceedings. *Id.*; Dkt. No. 1 at 14.

On September 21, 2026, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") officers in Renton, Washington and taken into ICE custody "after the officers determined that [he] was previously removed from the United States, and systems checks showed no record of lawful entry." Dkt. No. 9 at 3. The same day, he was issued a Form I-871, Notice of Intent/Decision to Reinstate Prior Order, which reinstated his prior order of expedited removal. *Id.* He has been detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington since September 21, 2026. Dkt. No. 1 at 2.

Petitioner filed his petition for a writ of habeas corpus on September 28, 2026. *Id.* at 1. Respondents[2] filed a timely response, Dkt. No. 8,[3] and Petitioner filed a traverse, Dkt. No. 11. On November 4, 2026, Respondents filed a Notice of Intent to Remove Petitioner. Dkt. No. 12 at 1. On November 12, 2026, the Court received Petitioner's Emergency Motion to Stop [H]is Removal and Transfer and For a Prompt Decision on [H]is Petition. Dkt. No. 13. In that motion, he requested that the Court prohibit Respondents from removing or transferring him while his petition is pending, and to decide his petition "as soon as possible[.]" *Id.* at 3.

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[3] The Court does not consider the Declaration of Jennifer Wong, Dkt. No. 10, or its attachments because the declaration is not signed under penalty of perjury as required by 28 U.S.C. § 1746.

## II. DISCUSSION

Petitioner argues that he is detained under Section 1226(a), not Section 1225(b), because he was arrested inside the country, and the arrest warrant issued in 2023 authorized his custody under Section 1226. Dkt. No. 1 at 5; *see also* Dkt. No. 1-2 at 4. He contends that he is therefore entitled to a bond hearing. Dkt. No. 1 at 5–6. He further argues that his detention without a hearing violates his due process rights. *Id.* at 6. He asks the Court to order his immediate release, or in the alternative, order "an individualized bond hearing before an immigration judge," where the Government "must prove by clear and convincing evidence that [he is] a flight risk or a danger" to the community. *Id.* at 7. Respondents argue that Petitioner is mandatorily detained under Section 1231(a)(2) pursuant to a final order of removal. Dkt. No. 8 at 1.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const.

amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

Section 1231 of the INA governs the detention, release, and removal of noncitizens who have been ordered removed. Detention during the "removal period" is mandatory. 8 U.S.C. § 1231(a)(2). The removal period lasts 90 days and begins to run on the latest of the following: (1) the date the order of removal becomes final; (2) if the removal order is judicially reviewed and if a court orders a stay of the removal of the non-citizen, the date of the court's final order; or (3) if the noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement. *Id.* § 1231(a)(1)(B). Although there is no statutory limit on the Secretary's discretion to detain noncitizens beyond the 90-day period, the Supreme Court held that the "presumptively reasonable" period for detention following a removal order is six months. *Zadvydas*, 533 U.S. at 701.

**B. Petitioner Is Subject to Mandatory Detention**

Although Petitioner contends that he is being detained under section 1226(a), Dkt. No. 1 at 5–6; Dkt. No. 11 at 3–5, he is detained under Section 1231(a)(2). His removal order became administratively final on September 21, 2026, the day his prior order of expedited removal was reinstated. Dkt. No. 9 at 3; *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831–33 (9th Cir. 2017) (holding that reinstated removal orders are administratively final for purposes of detention); *see also T.M. v. Warden of the Golden State Annex*, No. 1:26-cv-03789-TLN-CSK, 2026 WL 2210030, at *2

(E.D. Cal. July 31, 2026) ("In the context of reinstated removal orders, the 90-day removal period begins to run on the date when petitioner's prior removal order is reinstated." (citation modified)). His removal period thus began on September 21, 2026. 8 U.S.C. § 1231(a)(1)(B)(i). Accordingly, he is still within the 90-day period in which his detention is mandatory. 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the [noncitizen]."); *see also Khotesouvan v. Morones*, 386 F.3d 1298, 1299–300 (9th Cir. 2004) ("Congress has mandated the detention of an alien ordered removed for 90 days"); *Arango Marquez v. I.N.S.*, 346 F.3d 892, 898 (9th Cir. 2003) ("Detention during the removal period is mandatory." (citing 8 U.S.C. § 1231(a)(2)). Furthermore, the 90-day period of mandatory detention under 8 U.S.C. § 1231(a)(2) has been found to "pass[ ] constitutional scrutiny." *Khotesouvan*, 386 F.3d at 1301. Because Petitioner filed his petition within the removal period and he is still subject to mandatory detention, he is not entitled to habeas relief at this time. *Id.* ("Because petitioners filed their habeas petitions during the 90-day removal period, the district court correctly dismissed the petitions.").

Accordingly, the Court denies the habeas petition. If Petitioner is not removed within the 90-day removal period, and continued detention under Section 1231(a) becomes unreasonably prolonged and indefinite, he may file another habeas petition at that time. Now, though, he is not entitled to habeas relief.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Medina Jimenez's petition, Dkt. No. 1, and DENIES his motion for a temporary restraining order, Dkt. No. 13, as moot.

Dated this 13th day of November, 2026.

Lauren King
United States District Judge